## TERRITORY OF MONTANA, APPELLANT, *v.* W. F. CUMMINS, RESPONDENT.

APPEAL.— *When it will not be considered.* —In the case at bar, a criminal action, an appeal had been taken in behalf of the Territory from a judgment of the District Court. No briefs were filed, and the attorney-general representing the Territory stated to the court that he could find no merit in the appeal. *Held,* that under such circumstances, the judgment must be affirmed without the assignment of any reasons for the decision.

*Appeal from the First Judicial District, Lewis and Clarke County.*

### STATEMENT.

The indictment in the first count charged the defendant with a violation of section 590, division 5, Compiled Statutes, in negotiating a policy of insurance upon the property of one Morris Susman, in and for a foreign insurance company, which had not complied with the requirements of the statutes of the Territory, so as to be qualified for the transaction of business. The second count charged the defendant with an attempt to commit the offense described in the first.

A plea of not guilty was made, and the trial proceeded before a jury. A policy of insurance, issued to one L. Susman, upon a certain stock of general merchandise by "The Traders and General Insurance Company, Limited," was introduced in evidence by the prosecution; and the said company was admitted not to have complied with the statutes of the Territory, prescribing certain conditions under which foreign corporations shall transact the insurance business in Montana. The policy was in the usual form of such instruments.

Morris Susman, the main witness for the prosecution, testified as follows: "My name is Morris Susman, and I lived in Wickes the eleventh day of last June, and was there engaged in the general merchandise business. My stock of goods was in the store at Wickes, and was not in transit. The goods were in that store for a month or two, as far as my recollection goes. I had transactions with the defendant, W. F. Cummins, in regard to insurance on this stock of goods. He wrote me some letters and I got insured through the letters principally. A gentleman by the name of Newman, who was working for me, came into Helena, and I told him to go and see some insurance agent, so

that I might get my goods insured; and he went and saw Mr. Cummins, and as the result of this call upon him, some letters were written by him to me, which culminated in his insuring my property. I sent him express money orders for fifty-four dollars, to pay the premium, the receipt of which was acknowledged by Mr. Cummins, and he told me that I would receive my policy direct from the office, which I did in a short time afterwards—this policy which has been introduced in evidence. And the goods upon which this policy was taken were my stock in trade in this business, and I had carried on business under the name of L. Susman before I went to Wickes, and was so doing when I took the policy."

The policy of insurance and the testimony of said witness constituted all the evidence upon the trial relating to the questions decided.

The court gave the following instructions to the jury:—

1. This indictment is founded upon section 27 of an act regulating insurance companies, other than life insurance companies, passed in 1883. Said section provides that every insurance company organized under the laws of, or doing business in this Territory, shall conform to all the provisions of this act applicable thereto; and any officer or person doing, or attempting to do business in this Territory, failing to comply with any of the requirements of this act, or violating any of the provisions thereof, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in a sum not exceeding one thousand dollars, and by imprisonment in the county jail for a period not less than thirty days nor more than six months.

2. The indictment charges that the defendant did wrongfully and unlawfully act and negotiate for "The Traders and General Insurance Company, Limited," and that said "The Traders and General Insurance Company, Limited," was an insurance company organized without, and not under the laws of the Territory of Montana, and that the defendant did do business for the said company in and about the taking of a certain policy or risk of insurance upon the property of one Morris Susman. This is the first count. The second count charges that he did wrongfully and unlawfully attempt to do business for, and to act and negotiate for the said company, and did so attempt to do business for

said company in and about the taking of a certain risk of insurance upon the property of one Morris Susman. The second count charges the attempt to do that which the first count charges was actually done.

3. It is admitted that said company had not complied with the laws of the Territory. The general term, "did wrongfully and unlawfully act and negotiate for and do business for the said company," is limited by the phrase "in and about the taking of a certain policy or risk of insurance upon the property of one Morris Susman." No doing of business or attempt to do business can be considered except what is specified, to wit, in and about the taking of a certain policy or risk of insurance upon the property of one Morris Susman. The defendant must be convicted, if at all, for what he may have done in regard to a certain policy of insurance upon the property of one Morris Susman. No other negotiation or business can be considered under this indictment, the general expression, "did negotiate and do business for," being limited by the specification in regard to the policy of insurance. It then becomes a question, whether or not he did any act that would make him criminally liable in regard to the issuance of a policy of insurance.

There is no pretense in the proof that there is any risk of insurance other than that evidenced by the policy of insurance introduced in proof before you; the indictment charging that it was for the taking out of a policy of insurance upon the property of Morris Susman, and not stating in whose name the policy was issued, the policy issued in the name of L. Susman has been admitted before you as evidence. Any valid 'policy that would sustain the averment in the indictment, it makes no difference in whose name it may be issued, will be sufficient, provided the defendant did anything directly or indirectly in procuring its issuance.

4. It is necessary to construe the statute, upon which this indictment is founded, in order to have a correct understanding of that section, which creates the misdemeanor with which the defendant is charged. It provides that foreign insurance companies shall comply with certain regulations before they can lawfully do business within this Territory, and the section referred to prohibits any person from doing, or attempting to do

business in this Territory, for any insurance company organized without the Territory, which has failed to comply with the requirements of the statute. The contemplation then is, that it is a foreign company, organized to do business in some other State or Territory or country, and that the party who is criminally liable was doing, or attempting to do business for said company in this Territory. It does not, then, have reference to a fraud which a person may perpetrate by pretending to represent an insurance company that has no existence, and thereby getting money under false pretenses; for such an offense the party would be criminally liable under a different statute. This statute has reference to the transaction of business, or the attempting to do business, which would otherwise be legitimate, if the foreign corporation for which he does business had complied with the requirements of the territorial statute. Then I instruct you, that before he can be held criminally liable for procuring the issuance of a policy of insurance, such policy must be valid in law, if the company issuing it had complied with the territorial statutes, so that upon its breach the party injured could have redress in the courts of the Territory. If he has to do with the issuance of a policy in such manner that it is a nullity, and would be a nullity if the company issuing it had complied with the laws of the Territory, it would not be doing business in the sense of the statute under consideration.

5. This makes it necessary to instruct you as to the nature of a policy of insurance, as a preliminary to the determination of the question, whether the policy in evidence before you is a nullity, or a valid instrument. Insurance is defined to be a contract whereby one for a consideration undertakes to compensate another, if he shall suffer loss. It is an essential to every valid policy that the party insured must have some interest in the property insured. Such interest may be ever so slight, but there must be some interest, or right or event or hazard, against which the company undertakes to protect or indemnify the insured, in order to make it valid. A policy taken out by a person who has no interest in the property insured is a nullity. Mr. May, in his work on Insurance, section 75, says: "The courts now, nearly without exception, hold such policies void, not only because they are in contravention of

the fundamental object of the contract of indemnity, since where there is no interest there can be no loss, and where there is no loss there can be no indemnity; but because when the insured has nothing to lose, and everything to gain, upon the happening of the event insured against, it would be dangerous and demoralizing to subject the insured to so great a temptation to destroy the property or life upon which the insurance is effected, and sound public policy will not sanction such temptation." In the case of the *Ætna Insurance Company* v. *Miers*, 5 Sneed, 140, Judge Caruthers said: "There must be a line of distinction between wager policies and those coupled with an interest. The contract of insurance is one of indemnity against losses and disadvantages to the insured, and therefore any interest in the subject-matter, or property insured, is sufficient to sustain an insurance of real estate. A party in custody of property as bailee, consignee, or agent may insure it in his own name, and in that event he will be held as a trustee for the principal in case of loss; so likewise a principal may direct another to take out a policy of insurance, and if he does it in his own name, he will be held to hold it in trust, in case of loss, for the benefit of his principal; and even if a party voluntarily, being in custody of property, takes out a policy of insurance without interest in himself, and the owner of the property afterward adopts the policy as his own, it will be valid and binding, and he will be entitled to recover the loss, in case of the destruction of the property insured. But there is no principle of law that provides that a person may assume the name of another and have a policy of insurance issued in his behalf under such name, and that other person whose name is thus assumed, and who is not connected with it as bailee, consignee, or agent, or in any manner whatever, be held as trustee for his benefit in case of loss."

6. I will state to you, then, that there being no proof to show that L. Susman took the policy of insurance upon the goods of Morris Susman, at his solicitation, or voluntarily, and that he afterwards ratified and adopted the act as his own; but the proof on the contrary all showing, and it being admitted that he took out the policy himself under the assumed name of his wife; I state to you that such policy is a nullity, and it does not come within the prohibition of the statute which makes it a misde-

meanor for any person to do business, or attempt to do business for a foreign company, not having complied with the territorial statutes. The charge in the indictment, then, that the defendant transacted the business of an insurance agent, in and by taking a certain policy of insurance upon the property of Morris Susman, is not sustained by the production of a policy in the name of L. Susman, which is in itself a nullity, although it may embrace the property of Morris Susman.

7. There being no controversy about the facts, and this being the view of the court as to the law, he instructs you to return a verdict of not guilty in your seats.

The jury accordingly returned a verdict of not guilty. The Territory appealed.

*W. E. Cullen,* Attorney-General, for the Territory.

*Francis Adkinson,* for Defendant.

BACH, J.—The appeal in this case is taken by the Territory. No brief has been filed by either party, and the attorney-general has stated in open court that he finds no merit in the appeal. In view of the fact that an opinion or decision rendered in this court upon such conditions would scarcely be considered of any value as a precedent, even within our own jurisdiction, the judgment will be affirmed without any further reason assigned therefor.

The judgment is affirmed.

*Judgment affirmed.*

DE WOLFE, J., and LIDDELL, J., concur.